[No. A117892. First Dist., Div. Four. Nov. 12, 2008.]

ERIC HOOPES, Plaintiff and Appellant, v.
JOHN P. DOLAN et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.D.

COUNSEL

Thomas Eugene Ho'okano for Plaintiff and Appellant.

Peter Hass and Michael John Veiluva for Defendants and Respondents John P. Dolan and Margaret Dolan.

Arlene Segal for Defendants and Respondents Said Nabhan and Feada Nabhan.

OPINION

SEPULVEDA, J.—A commercial tenant, Eric Hoopes, sued his landlord and another tenant claiming exclusive parking rights under his lease. Defendants denied plaintiff's interpretation of the lease, and also asserted that plaintiff was equitably estopped from suing because plaintiff stood silent for years when he knew defendants believed parking was shared between the tenants. Defendants moved to bifurcate the trial to have the equitable estoppel defense and other issues tried to the judge first, before a jury trial on plaintiff's causes of action. Plaintiff opposed the motion. The court denied bifurcation and held a jury trial on plaintiff's legal claims for breach of contract, trespass, and fraud without the judge first considering defendants' equitable estoppel defense.

The jury found in plaintiff's favor. But the judge, in ruling on the reserved equitable issues, entered judgment for defendants upon concluding that equitable estoppel applied. The trial court also ruled on the parties' competing requests for declaratory and injunctive relief and, in doing so, rejected the jury's factual findings and made its own independent evaluation of the evidence. Plaintiff appeals and challenges the judge's power to grant equitable relief to defendants after a jury verdict in plaintiff's favor.

We conclude that the trial court erred in disregarding the jury's verdict when fashioning equitable relief founded on the same evidence and the same operative facts as the verdict. However, we also conclude that the defense of equitable estoppel was a matter within the exclusive province of the trial judge and that it raised legal and factual issues undecided by the jury. While the trial judge should have considered the equitable defense first, and thus avoided an unnecessary jury trial, the order of trial was within the court's discretion and did not divest the judge of his duty to determine applicability

of equitable estoppel. The judge's ultimate resolution of that dispositive issue in defendants' favor, supported by substantial evidence, must be affirmed.

## I.  FACTS

Defendants John P. Dolan and Margaret Dolan purchased commercial property in Castro Valley around 1976. A restaurant, the Dell Café, was operating on the property and has continued to operate to the present under leases from the Dolans. The Dolans also established another business on the property, a lumberyard they operated for many years. The two business establishments, Dell Café and the Dolan lumberyard, always shared a single lot for customer parking. From 1994 to 1999, the Dolans leased the Dell Café to Nasri and Diyana Jweinat under a written lease that stated: "parking area to be utilized on a non-exclusive basis by and between Lessor and Lessee, or any other Tenants."

In 1996, the Dolans leased their lumberyard premises to plaintiff Hoopes, who established a truck rental business. Hoopes was an experienced businessman: he had bought and sold about 70 parcels of real property. In his letters of intent proposing to lease the premises, Hoopes stated his intent to use the premises for truck rental, a retail store, and storage facilities. Hoopes's letters did not mention parking. A written lease was signed in June 1996 for a five-year term, with options to renew. The lease consists of a standard commercial lease form, a parcel map, and form and typewritten addenda. The lease does not mention parking.

At trial, Hoopes testified that he met with John Dolan before the lease was signed, and Dolan told Hoopes that Hoopes would have exclusive parking (aside from spaces directly in front of the Dell Café). Dolan denied ever meeting with Hoopes during lease negotiations, and Dolan's real estate agent (Bonnie Chui) testified that Dolan and Hoopes never met. The real estate agent said she conducted the lease negotiations with Hoopes, and that the issue of parking "never came up" during those negotiations.

In November 1996, six months after Hoopes began his tenancy, John Dolan wrote a memorandum to Hoopes about parking. The memorandum, dated November 21, 1996, states: "There seems to be some misunderstanding regarding parking on [truck] rental lot? [¶] It was never my intent written or oral to give exclusive parking on the lease in question[,] [u]se of premises U-haul Truck Rental, Retail Store + Storage. Hopefully enclosed documents can clear up any misunderstanding and that you + others can get along."

Dolan wrote a contemporaneous note to Chui, his real estate agent, asking her to deliver the memorandum to Hoopes. Chui testified that, in November 1996, she delivered to Hoopes the Dolan memorandum along with the referenced enclosed documents, which included the Jweinat lease for the Dell Café noting nonexclusive parking shared between the tenants. Hoopes admitted receiving the Dolan memorandum, but he testified that Chui did not give him the memorandum until January 1997, and Hoopes denied receiving the referenced enclosures. Hoopes testified that he was surprised by Dolan's memorandum but did not telephone Dolan about the assertion that parking was not exclusive, or to ask about the referenced enclosures. Dolan testified that Hoopes never replied to the memorandum to contest Dolan's assertion that parking was not exclusive. The lessee of the Dell Café, Nasri Jweinat, declared that Hoopes no longer claimed exclusive use of the parking lot after November 1996.

In 1999, Dolan signed a lease for the Dell Café with defendants Said and Feada Nabhan. The lease includes an express provision promising "a shared parking lot for tenants, invitees, and customers of the tenants." As with the prior lease for the Dell Café, the Nabhan lease specifies: "parking area to be utilized on a non-exclusive basis by and between Lessor and Lessee, or any other Tenants." (Underscoring omitted.) In 2001, Hoopes renewed his lease with Dolan.

Nabhan, lessee of the Dell Café, testified that his customers used the entire parking lot without incident from 1999 until 2004, when Hoopes first disputed parking rights. According to Nabhan, the first incident occurred when Hoopes and a Dell Café customer both tried to park in the same spot. Hoopes exchanged words with the customer, then "barge[d]" into the café and demanded that Nabhan not serve the customer. Nabhan served the customer, and a month or two later Hoopes told Nabhan that Hoopes was entitled to exclusive use of the western side of the parking lot. Hoopes then posted signs and spray painted the pavement claiming exclusive use for his business, Valley Truck. Hoopes disputed Nabhan's testimony at trial, and said that he told Nabhan in 1999 or 2000 that the western side of the parking lot belonged to Hoopes. Hoopes said he asked Nabhan to have Dell Café customers move their cars and Nabhan always complied until 2004.

In August 2004, Hoopes wrote to Dolan and Nabhan claiming exclusive parking rights, and threatening legal action to enforce those rights. The letter followed Hoopes's offer to Dolan to buy the property. The August 2004 letter is the first written communication from Hoopes claiming exclusive parking rights. Dolan testified that he "made a special trip to meet" Hoopes to discuss

the letter, and Dolan offered to release Hoopes from the lease if Hoopes was unhappy. Hoopes reportedly said he was happy with the lease and the problem lay with the Dell Café tenants. According to Dolan, Hoopes said: "why don't you sell me the property, and you will be off the hook." The dispute was not resolved.

## II.  PROCEDURAL HISTORY

In February 2005, Hoopes sued John and Margaret Dolan (landlords), and Said and Feada Nabhan (Dell Café tenants). Hoopes filed an amended complaint in June 2006, averring six causes of action: (1) breach of contract/lease (landlords); (2) trespass (landlords and Dell Café tenants); (3) fraud (landlords); (4) negligent misrepresentation (landlords); (5) declaratory relief (landlords and Dell Café tenants); and (6) injunctive relief (landlords and Dell Café tenants). Hoopes alleged that his lease entitled him to the exclusive use of the parking lot, with the exception of a few spaces reserved for the Dell Café, and that café customers wrongfully parked in his lot. Hoopes based his claim of entitlement on general language in the Dolan-Hoopes lease granting unqualified use of the "Premises," which Hoopes argued necessarily included the parking lot.

The landlords and the Dell Café tenants answered the amended complaint and interposed various defenses, including equitable estoppel. The Dell Café tenants also cross-complained for nuisance and an injunction, claiming that Hoopes harassed their customers and interfered with parking at the Dell Café. The court granted the Dell Café tenants a preliminary injunction and ordered that parking spaces be shared pending trial.

In advance of trial, the Dolan defendants (collectively, Dolan) filed a bifurcation motion. Dolan asked for bifurcation and a prior separate bench trial on equitable issues. Dolan argued that Hoopes's causes of action for declaratory relief and injunction were equitable claims, as was the Nabhans' cross-complaint for an injunction. Dolan also noted the existence of equitable defenses, including estoppel. Additionally, Dolan argued that the court was required to consider extrinsic evidence on lease interpretation outside the jury's presence.

Hoopes opposed the bifurcation motion. Hoopes argued that the same facts were relevant to legal and equitable defenses, and thus bifurcation would lead to a double trial with the same evidence introduced twice. Hoopes also insisted that defendants were unlikely to prevail on their equitable estoppel defense.

A ruling on the bifurcation motion appears to have been deferred until the case was assigned for trial. Dolan renewed the bifurcation request with an in limine motion asking that "all equitable claims and defenses [be] heard by the Court before any legal claims [or] defenses of the parties are heard by a jury." Hoopes renewed his opposition, again arguing that the legal and equitable issues rested on the same evidence.

The hearing on the bifurcation motion shows that the parties' focus was on the role of judge and jury in receiving extrinsic evidence on contract interpretation. The defense of equitable estoppel—which later proved to be dispositive of the case—was mentioned in the briefs but not discussed at the hearing as a basis for bifurcation. The court denied the bifurcation motion.

A jury trial was held over the course of 13 days in October and November 2006. The jury returned a special verdict in favor of plaintiff Hoopes, upon concluding that Hoopes had the right to exclude Dell Café customers from the parking lot. The jury found landlord Dolan liable for breach of contract, intentional misrepresentation, concealment, negligent misrepresentation, and trespass. The jury found Dell Café tenant Said Nabhan liable for trespass, and rejected the Nabhan cross-complaint for nuisance. The jury assessed damages of $100 for the breach of contract, and $57,000 for the remaining claims against Dolan. The jury assessed zero damages for Nabhan's trespass. On punitive damages, the jury found that Dolan engaged in fraud but the court struck Hoopes's punitive damages claim for failure to present evidence of Dolan's net worth.

The jury was excused and the court set a later hearing date to consider "the parties' competing requests for declaratory and injunctive relief." The parties filed briefs addressing equitable remedies and defenses, including equitable estoppel. The court issued a written statement of intended decision and, after receiving objections, issued its final statement of decision and judgment on March 14, 2007.

The court entered judgment in favor of defendants. The court found that plaintiff Hoopes was equitably estopped from asserting his claims for breach of contract, fraud, and trespass because he knew, from Dolan's November 1996 memorandum, that Dolan leased shared parking to the Dell Café and Hoopes did nothing to contest parking over years of shared use. In ruling on the parties' competing requests for declaratory and injunctive relief, the court rejected the jury's factual findings and made its own independent evaluation of the evidence. The court found, contrary to the jury's special verdict, that Hoopes did not have the right to exclude Dell Café customers from the

parking lot and that parking was meant to be shared under the Dolan-Hoopes lease.

The court entered judgment in favor of defendants on plaintiff's first amended complaint, and in favor of Said and Feada Nabhan on their cross-complaint. The court issued a permanent injunction enjoining Hoopes from interfering with Dell Café customers' use of the parking lot. The court designated defendants the prevailing parties.

Hoopes appealed the judgment in May 2007. The court later awarded contractual attorney fees of $249,701.95 to the Dolan defendants, and costs to both the Dolan and Nabhan defendants. Hoopes amended his notice of appeal to include the order awarding defendants' costs and fees. The parties completed briefing on appeal in August 2008.

## III. DISCUSSION

Plaintiff and appellant Hoopes argues that the trial court erred in disregarding the jury's verdict in ruling on the equitable remedies of declaratory and injunctive relief, and the equitable defense of estoppel. Hoopes is right on the first point concerning remedies, but not the second concerning the equitable estoppel defense. The defense of equitable estoppel was a distinct matter within the exclusive province of the trial judge that raised legal and factual issues undecided by the jury. The judge's resolution of the equitable estoppel defense in defendants' favor is supported by substantial evidence. We therefore affirm the judgment despite other errors by the trial court.

### A. *General principles on the trial of legal and equitable issues*

■ Historically, there were separate law and equity courts. (See Annot., Nature and effect of jury's verdict in equity (1945) 156 A.L.R. 1147.) The law courts dealt with ordinary property rights, debts, and trespasses and adjudicated disputes by live testimony before a lay jury. (*Ibid.*) The equity courts dealt with ethical matters and adjudicated disputes by written testimony before a judge. (*Ibid.*) The separate law and equity courts were merged, but the distinction between law and equity remains to this day. The right to a jury trial for civil actions is generally limited to those causes of action (and their analogues) that were historically triable in a court of law. (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8–9 [151 Cal.Rptr. 323, 587 P.2d 1136]; *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 299 [231 P.2d 832]; see Cal. Const., art. I, § 16; Code Civ. Proc., §§ 592, 631, subd. (a).) Those causes of action that were historically tried to a

judge remain triable to a judge today because it is thought that the exercise of equitable powers "depend[s] upon skills and wisdom acquired through years of study, training and experience which are not susceptible of adequate transmission through instructions to a lay jury." (*A-C Co. v. Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462, 473 [219 Cal.Rptr. 62] (*A-C Co.*).)

While the judge determines equitable causes of action, the judge may (in rare instances) empanel an advisory jury to make preliminary factual findings. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2008) ¶¶ 2:170 to 2:171, p. 2-33 (rev. # 1, 2007).) The factual findings are purely advisory because, on equitable causes of action, the judge is the proper fact finder. (*A-C Co., supra*, 173 Cal.App.3d at pp. 473–474.) "[W]hile a jury may be used for advisory verdicts as to questions of fact [in equitable actions], it is the duty of the trial court to make its own independent findings and to adopt or reject the findings of the jury as it deems proper." (*Id.* at p. 474.) In contrast, a judge is bound by a jury's verdict rendered on legal causes of action. (*Southern Pacific Land Co. v. Dickerson* (1922) 188 Cal. 113, 116 [204 P. 576].) A jury is not "a mere advisory body" in deciding legal causes of action. (*Ibid.*) It has long been held that, "where a party is entitled to a jury as a matter of right, the court is without authority to enter a judgment contrary to the verdict and that the determination of a jury is conclusive unless set aside upon the granting of a motion for a new trial or unless the general verdict is inconsistent with special findings of fact made by the jury." (*Ibid.*)

■ Complications arise when legal and equitable issues (causes of action, requested remedies, or defenses) are asserted in a single lawsuit. The lawsuit is rarely treated as a single unit for purposes of determining the right to a jury trial. (*Hughes v. Dunlap* (1891) 91 Cal. 385, 388–390 [27 P. 642]; cf. *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 622–623 [12 Cal.Rptr.2d 741] [where issues intertwined, the "gist" of the action determines if triable by jury]; see James, *Trial by Jury and the New Federal Rules of Procedure* (1936) 45 Yale L.J. 1022, 1031–1043 [discussing modes of trial in mixed actions with legal and equitable issues].) In most instances, separate equitable and legal issues are "kept distinct and separate," with legal issues triable by a jury and equitable issues triable by the court. (*Weber v. Marshall* (1861) 19 Cal. 447, 457; accord, *Thomson v. Thomson* (1936) 7 Cal.2d 671, 681 [62 P.2d 358].)

The order of trial, in mixed actions with equitable and legal issues, has great significance because the first fact finder may bind the second when determining factual issues common to the equitable and legal issues. (Wegner

et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶ 2:160, p. 2-32.1 (rev. # 1, 2008).) It is well established in California jurisprudence that "[t]he court may decide the equitable issues first, and this decision may result in factual and legal findings that effectively dispose of the legal claims." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1244 [19 Cal.Rptr.3d 416], italics omitted.) This district Court of Appeal has observed that the "better practice" is for "the trial court [to] determine the equitable issues before submitting the legal ones to the jury." (*Bate v. Marsteller* (1965) 232 Cal.App.2d 605, 617 [43 Cal.Rptr. 149].) The historical reason for this procedure, at least as concerns equitable defenses, is that the same order of trial was observed when there were separate law and equity courts: "If a defendant at law had an equitable defense, he resorted to a bill in equity to enjoin the suit at law until he could make his equitable defense effective by a hearing before the chancellor." (*Liberty Oil Co. v. Condon Bank* (1922) 260 U.S. 235, 243 [67 L.Ed. 232, 43 S.Ct. 118].) "[T]he practical reason for this procedure is that the trial of the equitable issues may dispense with the legal issues and end the case." (*Moss v. Bluemm* (1964) 229 Cal.App.2d 70, 73 [40 Cal.Rptr. 50].) In short, "trial of equitable issues first may promote judicial economy." (*Nwosu, supra*, at p. 1238.)

■  California's preference for the trial of equitable issues before legal issues has produced a number of cases in which bench resolution of equitable issues preceded consideration of legal claims, and curtailed or foreclosed legal issues. (*Nwosu v. Uba, supra*, 122 Cal.App.4th at pp. 1238–1240 [collecting cases].) "It is well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury . . . and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 [111 Cal.Rptr. 693, 517 P.2d 1157].)

There are few California cases where legal issues were tried before equitable ones (as was done here), but it is equally clear that a jury's determination of legal issues may curtail or foreclose equitable issues. (*Hughes v. Dunlap, supra*, 91 Cal. at p. 388; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶ 2:166, pp. 2-32.2 to 2-32.3 (rev. # 1, 2008); see *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 487 [54 Cal.Rptr.2d 888] [holding that bench findings bind jury upon reasoning equally applicable to the reverse: "[i]ssues adjudicated in earlier phases of a bifurcated trial are binding in later phases of that trial and need not be relitigated"].)

■ Federal cases are instructive. Unlike California, federal courts usually try legal issues before equitable issues in mixed actions. (*Beacon Theatres v. Westover* (1959) 359 U.S. 500, 510–511 [3 L.Ed.2d 988, 79 S.Ct. 948].) Given that procedural difference, federal courts are fertile ground for cases in which legal issues were tried before equitable ones. The "presumptive rule" in those federal cases is that "the first factfinder binds the second on factual issues actually litigated and necessary to the result." (*Troy v. Bay State Computer Group, Inc.* (1st Cir. 1998) 141 F.3d 378, 383.) Where legal claims are first tried by a jury and equitable claims later tried by a judge, the trial court must follow the jury's factual determinations on common issues of fact. (*Los Angeles Police Protective League v. Gates* (9th Cir. 1993) 995 F.2d 1469, 1473.)

The reason why the first fact finder binds the second on common issues of fact is not hard to discern. The United States Supreme Court likened the situation to collateral estoppel, where a party is precluded from relitigating an issue tried in a prior action. (*Beacon Theatres v. Westover, supra*, 359 U.S. at pp. 504–505.) A California court has made a similar analogy: "Just as the parties are bound by collateral estoppel where issues are litigated in a prior action, so, too, do issues decided by the court in the equitable phase of the trial become 'conclusive on issues actually litigated between the parties.' " (*Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1244.) While the comparison to collateral estoppel is inexact (*Troy v. Bay State Computer Group, Inc., supra*, 141 F.3d at p. 383), there are solid policy reasons for giving one fact finder's determinations binding effect in a mixed trial of legal and equitable issues. The rule minimizes inconsistencies, and avoids giving one side two bites of the apple. (*Ibid.*) The rule also prevents duplication of effort. (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co., supra*, 47 Cal.App.4th at p. 487.)

B.  *The trial court erred in disregarding the jury's verdict when ruling on equitable remedies that relied on common issues of fact previously adjudicated by the jury*

The jury here found in favor of plaintiff and against defendant landlord on causes of action for breach of contract, fraud, and trespass, and against defendant Dell Café tenants for trespass and nuisance. In its special verdict, the jury expressly found that plaintiff Hoopes had "the right to exclude the owner and customers of Dell's [*sic*] Café from the disputed area of the parking lot."

After the jury verdict, the parties submitted equitable issues to the court, including whether any party was entitled to declaratory and injunctive relief.[1] The court made a wholly independent evaluation of the trial evidence and rejected the jury's findings of fact. In direct contradiction of the jury's special verdict, the court found that plaintiff Hoopes had no right to exclude the owner and customers of Dell Café from the disputed area of the parking lot: "the intention of the parties was that the parking lot be shared."

The court erred in disregarding the jury's verdict when fashioning equitable relief. "[W]here the legal issues are tried first, the judge cannot ignore the jury's verdict and grant equitable relief inconsistent with the jury's findings." (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶ 2:166, pp. 2-32.2 to 2-32.3 (rev. # 1, 2008).) A case similar to the one presented here is *Hughes v. Dunlap, supra*, 91 Cal. at page 387, where the plaintiff sued for trespass and sought damages and an injunction. The jury returned a verdict for the defendant. (*Id.* at p. 388.) The trial court rejected the findings of the jury and entered judgment against the defendant, awarding damages and an injunction. (*Ibid.*) The defendant appealed and argued that, at the least, the court was bound by the jury's verdict denying damages. (*Id.* at pp. 386–387.)

The California Supreme Court reversed the trial court on the narrow point raised by the defendant, holding that the court erred in disregarding the jury's verdict on damages. (*Hughes v. Dunlap, supra*, 91 Cal. at pp. 388–389.) However, the high court also commented on the impropriety of the trial court granting an injunction inconsistent with the jury's findings. The court observed: " 'There is certainly no impossibility, nor even difficulty, in requiring a jury to decide the issues of fact upon which the right to many kinds of equitable remedies depends; this is the province of a jury in legal actions, the court pronouncing the judgment upon their verdict. A jury is clearly incompetent to frame and deliver a decree according to the doctrines and methods of equity; but *there can be no real obstacle in the way of its ascertaining the facts by its verdict, and leaving the court to shape the decree and award the relief based upon these facts*, in many species of equitable remedies.' " (*Id.* at p. 390, italics added.) The clear import of this observation is that a jury's factual findings on legal causes of action should bind the trial court when granting ancillary equitable remedies based on the same facts.

---

[1] We recognize that a cause of action for declaratory relief is not always an equitable claim triable to the court. (*Patterson v. Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 315 [85 Cal.Rptr. 665].) But the parties do not contest the court's authority to try the claim at issue here, only its authority to disregard prior jury determinations when trying the claim.

The trial court in this case departed from this principle through a mistaken reliance on cases holding that a court is not bound by jury findings in a trial of an *equitable* cause of action (as opposed to a legal cause of action), where trial findings are merely advisory. In rejecting the jury's findings here, the trial court said it had a duty to evaluate the evidence independently, and cited *A-C Co., supra*, 173 Cal.App.3d 462, and 7 Witkin, California Procedure (4th ed. 1997) Trial, section 123.

The cited authorities are inapplicable. The Witkin treatise states: "In proceedings in which a jury trial is not a matter of right (principally equity actions [citation]), the issues of fact must be tried by the court, 'subject to its power to order any such issue to be tried by a jury.' [Citations.] [¶] The verdict in that case, whether general or special, is advisory only. It is still the duty of the court to make its own independent findings and to adopt or reject the jury's findings as it deems proper." (7 Witkin, Cal. Procedure, *supra*, Trial, § 123, p. 143.) But, in this case, jury trial on breach of contract and other claims was a matter of right and the issues of fact were properly submitted to the jury. (Code Civ. Proc., § 592.) *A-C Co., supra*, 173 Cal.App.3d 462, is also inapplicable, as it simply holds that a trial court is not bound by the jury's verdict and must make its own independent evaluation of the evidence if an equitable cause of action is erroneously submitted to a jury. (*Id.* at pp. 472–474.) These authorities do not address the situation presented here, of a mixed trial of legal and equitable issues where issues of fact were properly submitted to the jury on legal causes of action, and the court later determined equitable remedies.

Nor are defendants aided by their reliance on *Saks v. Charity Mission Baptist Church* (2001) 90 Cal.App.4th 1116 [110 Cal.Rptr.2d 45] (*Saks*), and *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54 [35 Cal.Rptr.2d 515] (*DRG*). In *Saks*, additional evidence was presented during the equitable phase of trial that contradicted evidence presented to the jury in an earlier phase of trial. (*Saks, supra*, at pp. 1145–1148.) It was under those circumstances that the Court of Appeal opined that the judge had an obligation to weigh evidence independently when ruling on an equitable counterclaim. (*Ibid.*) *Saks* does not present a situation, as here, where the judge and jury were presented with the exact same evidence, and reached contrary conclusions. We acknowledge broad language in *Saks* suggesting that a trial court is always free to disregard a jury's verdict when ruling on equitable claims. (*Id.* at pp. 1147–1148.) We reject that suggestion, which is dicta and founded on a line of cases concerning the distinct situation where the jury made factual findings on equitable, not legal, causes of action for which its findings were never more than advisory. (*Ibid.*, citing *Posey v. Leavitt* (1991) 229 Cal.App.3d 1236, 1242, 1248–1249 [280 Cal.Rptr. 568] [advisory verdict on equitable action to

abate a nuisance], and *A-C Co., supra,* 173 Cal.App.3d at p. 474 [advisory verdict on equitable action for promissory estoppel].)

■ *DRG* is also inapposite to the precise matter under discussion: the judge's power to disregard a jury's verdict on legal causes of action when considering equitable remedies based on the same facts. In *DRG,* the plaintiff sued for breach of contract and equitable estoppel. (*DRG, supra,* 30 Cal.App.4th at p. 58.) The jury returned a verdict in the defendant's favor on the breach of contract claim, specifically finding that the defendant did not waive contract conditions, after which the trial court refused to consider the plaintiff's estoppel claim and entered judgment for the defendant. (*Ibid.*) The Court of Appeal reversed the judgment because waiver and estoppel are distinct doctrines—the jury's finding on waiver did not resolve the estoppel issue, which remained for court determination. (*Id.* at p. 62.) In short, the legal and equitable claims were founded on distinct facts, so the jury's factual determinations on the legal claim was not binding. This rule becomes critical in our next discussion of the court's ruling on equitable estoppel, but it does not save the court's ruling on equitable remedies. The trial court erred in disregarding the jury's verdict when fashioning equitable relief founded on the same evidence and same operative facts as the verdict. In a mixed trial of legal and equitable issues where legal issues are first tried to a jury, the court must follow the jury's factual determinations on common issues of fact.

C.  *The trial court was not bound by the jury's verdict when ruling on equitable estoppel because the defense was based on distinct facts not decided by the jury*

The trial court made a separate determination that plaintiff Hoopes was equitably estopped from asserting his claims for breach of contract, fraud, and trespass based on a claim of exclusive parking rights because Hoopes knew, from Dolan's November 1996 memorandum, that Dolan leased shared parking to the Dell Café tenants and Hoopes did nothing to contest parking until 2004, after years of shared use. The court's determination was founded on issues of fact distinct from those supporting the jury verdict, and thus was not bound by that verdict.

■ As the name suggests, equitable estoppel is an equitable issue for court resolution. (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; see *C & K Engineering Contractors v. Amber Steel Co., supra,* 23 Cal.3d at p. 9 ["equitable estoppel may be tried by the court without a jury"].) One aspect of equitable estoppel is codified in the Evidence Code: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.)

While the statutory formulation might suggest that equitable estoppel is limited to situations amounting to fraud (intentionally and deliberately misleading another), estoppel "has not been so narrowly applied." (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 487–488 [81 Cal.Rptr.3d 72] (*City of Hollister*); accord, *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384 [2 Cal.Rptr.3d 655, 73 P.3d 517] [estoppel may arise without fraud].) Equitable estoppel has been applied in a broader context, where the party to be estopped has engaged in inequitable conduct, induced another party to suffer a disadvantage, and then sought to exploit the disadvantage. (*City of Hollister, supra*, at p. 488.) "Broadly speaking, 'estoppel' refers less to a doctrine than to a conceptual pattern, first articulated in the courts of equity, which has come to pervade our law. When it is successfully invoked, the court in effect closes its ears to a point—a fact, argument, claim, or defense—on the ground that to permit its assertion would be intolerably unfair. It is commonly said that the party to be estopped, having conducted himself in manner X, will 'not be heard' to assert Y." (*Id.* at p. 486, fn. omitted.) In our case, the trial court found that Hoopes conducted himself as if the tenants had shared parking, so he will not now be heard to assert a claim for exclusive parking.

Nothing in the jury's verdict resolves the factual matter presented by the defense of equitable estoppel: Did Hoopes induce Dolan to rely on the use of shared tenant parking, then sue for exclusive parking rights after Dolan relied on the existence of shared parking? Hoopes argues on appeal that the jury verdict foreclosed a finding of estoppel because the jury found that Dolan misled Hoopes about parking when the lease was negotiated. The fact that Dolan misled Hoopes (by failing to disclose the adjacent tenants' lease arrangements) is distinct from the question whether Hoopes should nevertheless be estopped from claiming exclusive parking rights because Hoopes was later advised of those lease arrangements and made no objection.

█ Similarly, the jury's implicit finding that Hoopes did not waive his exclusive parking rights by making no objection to Dolan's assertion of shared parking did not resolve the question whether Hoopes should be estopped from claiming exclusive parking. "[W]aiver and estoppel are separate and distinct doctrines." (*DRG, supra*, 30 Cal.App.4th at p. 61.) "The essence of waiver . . . is the voluntary relinquishment of a known right, which may be effective as a matter of law without any demonstration that the other party was caused by the waiver to expose himself to any harm. [In contrast,] [s]uch causation is essential to estoppel, and where it is present the estoppel may arise involuntarily, and may effect the loss of rights the actor did not know he possessed." (*City of Hollister, supra*, 165 Cal.App.4th at p. 487.)

The jury here was instructed exclusively on waiver, not estoppel. The jury was told that Hoopes could be found to waive a contractual promise of exclusive parking only if Hoopes "freely and knowing[ly] gave up his right to have [landlord] John Dolan perform this obligation." Hoopes's attorney, in closing argument to the jury, emphasized that waiver of exclusive parking under the lease required a finding that Hoopes "intentionally and knowing[ly] waived that right." Estoppel does not require a voluntary relinquishment of a known right, and thus presented a distinct issue for the court's determination. (*City of Hollister, supra*, 165 Cal.App.4th at p. 487.)

The court in *DRG* noted this important distinction between waiver and estoppel, and went on to hold that a jury's determination that there was no waiver does not preclude a judge from finding estoppel. (*DRG, supra*, 30 Cal.App.4th at pp. 59–60, 61–62.) As mentioned earlier, the jury in *DRG* returned a verdict in the defendant's favor on a breach of contract claim, specifically finding that the defendant did not waive contract conditions. (*Id.* at p. 58.) The trial court relied on the jury's verdict in refusing to consider the plaintiff's estoppel claim, and entered judgment for the defendant. (*Ibid.*) The Court of Appeal reversed the judgment because waiver and estoppel are distinct doctrines—the jury's finding on waiver did not resolve the estoppel issue, which remained for court determination. (*Id.* at p. 62.) The same is true here. The legal causes of action and equitable defense were founded on distinct facts, so the jury's factual determinations on the legal claims were not binding.

This case—in which judgment turned on a court ruling made after a long jury trial—presents a powerful example of why it is generally considered "better procedure to rule upon the estoppel issue before submitting the matter for jury determination. However, the order of such a determination is within the sound discretion of the trial court." (*DRG, supra*, 30 Cal.App.4th at pp. 61–62.) We cannot say that the trial court abused its discretion here, and Hoopes is certainly in no position to claim otherwise given his insistence that the court hold a jury trial before deciding equitable issues.

D.  *The trial court's finding of equitable estoppel is supported by substantial evidence*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[*]See footnote, *ante*, page 146.

## IV.   DISPOSITION

The judgment is affirmed. The parties shall bear their own costs and attorney fees incurred on appeal.

Reardon, Acting P. J., and Rivera, J., concurred.

A petition for a rehearing was denied November 26, 2008, and appellant's petition for review by the Supreme Court was denied January 28, 2009, S169277. George, C. J., did not participate therein.