Filed 4/21/23  Ristau v. Likely Land & Livestock CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| HEATH RISTAU, as Special Administrator, etc., et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> LIKELY LAND & LIVESTOCK CO., INC., et al., <br><br> Defendants, Cross-complainants and Respondents. | C095204 <br><br> (Super. Ct. No. SCV0042799) |

Plaintiffs Heath Ristau, as Special Administrator of the Estate of Shirley A. Wright, and Heath Ristau, as Successor Trustee of the Wright 1990 Trust, dated November 14, 1990, sued defendant Likely Land & Livestock Co., Inc. (the Company) and defendants John Flournoy, David Flournoy, William Flournoy, Myles Flournoy, Jennifer Flournoy, and Frieda Fisher-Dubois (the individual defendants) (the Company and individual defendants are collectively referred to as the defendants) for claims arising

1

out of a property transfer from Shirley Wright to the Company prior to Shirley's death.[1] Plaintiffs explain the gravamen of the action "was financial elder abuse and the misrepresentation of defendants in inducing [Shirley] to transfer ownership of her ranch to [the Company]."[2]  The Company filed a cross-complaint against plaintiffs seeking specific performance of two agreements, a 1987 Option Agreement (Option Agreement) and a 2017 Exercise Option Agreement (Exercise Agreement).

The trial court bifurcated the legal and equitable issues, holding the jury trial on plaintiffs' complaint first.  The trial court heard the evidence presented during the jury trial and then held the court trial on the cross-complaint immediately following the jury's verdict.

The jury found in favor of the individual defendants on all causes of action.  The jury further found in favor of the Company on all causes of action, except for negligent misrepresentation.  As to the negligent misrepresentation finding against the Company, the jury awarded plaintiffs $300,000 for past economic loss.  In the court trial that followed, the trial court said it took the jury's verdicts "as advisories as to the issues contained herein" and granted specific performance of the Option Agreement and Exercise Agreement, as requested in the cross-complaint.  The trial court directed plaintiffs to dismiss their complaint, withdraw "their claims for return of property," and "tender the funds and transfer said real property."  Plaintiffs appeal.

---

[1]    We refer to Shirley Wright and George Wright by their first names due to the commonality of their last name. No disrespect is intended. We further refer to John Flournoy by his first name for the same reason. Placer Title Company was also named as a defendant but was dismissed from the action prior to trial. We list plaintiffs as they are identified in the judgment.

[2]    As explained *post*, we do not have a copy of the complaint or cross-complaint in the record.

2

Plaintiffs assert the judgment should be reversed because the trial court lacked authority to set aside the jury's negligent misrepresentation verdict against the Company, which was effected by requiring plaintiffs to dismiss their complaint. Relatedly, plaintiffs argue the trial court lacked authority to disregard the jury's negligent misrepresentation verdict "as advisory" and "substitute its subsequent inconsistent ruling on the equitable cause of action." Plaintiffs further raise evidentiary error arguments.

We find no merit in plaintiffs' evidentiary error claims but agree the trial court erred in requiring plaintiffs to dismiss the complaint, which effectively set aside the jury's negligent misrepresentation verdict against the Company. We further agree the trial court misunderstood the scope of its discretion during the bench trial when it viewed the jury's negligent misrepresentation verdict as advisory. As explained herein, because the jury trial preceded the bench trial in equity, the trial court "must follow the jury's factual determinations on common issues of fact." (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 158 (*Hoopes*).) The trial court did not consider whether the jury's factual determinations as to negligent misrepresentation precluded the equitable relief requested in the cross-complaint.

We accordingly reverse the judgment with a directive for the trial court to enter judgment in favor of plaintiffs, as provided in the jury's negligent misrepresentation verdict. Upon entry of the judgment in that regard, the Company may pursue any relief it otherwise has to challenge the judgment. The matter is further remanded to the trial court to reconsider its ruling on the cross-complaint consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

We initially admonish the parties for failing to provide record citations for *each* fact presented in their statements of facts. Some of the background facts stated herein were unsupported by citations to the record; however, the parties agreed on the unsupported facts, which we treat as mutual concessions. (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3.) Other background facts were drawn from the

3

information available to us in the record. In that regard, plaintiffs are also admonished for not providing this court with a complete record. For example, plaintiffs did not provide this court with a copy of the operative complaint or cross-complaint. We thus do not know the specifics alleged therein.

We set forth the general background here and provide additional factual background pertinent to plaintiffs' evidentiary arguments in the Discussion *post*, as necessary.

In 1987, George and Shirley Wright entered into the Option Agreement with the Company; John signed on behalf of the Company.[3] The Option Agreement provided the Company would have the first option to purchase the Wrights' property for $72,179.96 (regardless of market value) if the Wrights ever decided to sell it, or upon the Wrights' deaths.

In 2017, after George had passed away, Shirley and the Company signed the Exercise Agreement, which appears to memorialize the early exercise of the Option Agreement, and Shirley accordingly transferred the Wrights' property to the Company. John signed the Exercise Agreement on behalf of the Company.

Plaintiffs filed suit against defendants, asserting defendants each took advantage of Shirley because she was suffering from progressive dementia and was in poor physical health. Plaintiffs alleged two financial elder abuse causes of action and causes of action for conversion, breach of fiduciary duty, intentional misrepresentation, and negligent misrepresentation. The trial court bifurcated the legal and equitable issues, holding the jury trial on plaintiffs' complaint first.

---

[3]    In the trial court, plaintiffs argued the Option Agreement was between the Wrights and Lively Land and Livestock, a Nevada Corporation—a corporation that does not exist. The trial court, however, found the Option Agreement was a valid agreement between the Wrights and the Company, and plaintiffs do not challenge the trial court's finding in that regard on appeal.

The jury returned verdicts in favor of all defendants on the causes of action for financial elder abuse, conversion, breach of fiduciary duty, and intentional misrepresentation. As to the negligent misrepresentation cause of action, the jury found in favor of plaintiffs against the Company but otherwise found in favor of the individual defendants. The jury awarded plaintiffs $300,000 for past economic loss.

Before discharging the jury, the trial court ruled on the cross-complaint for specific performance, as follows: "[T]he Court is mindful of the jury verdicts and takes the verdicts as advisories as to the issues contained herein. [¶] As such, this court finds that there was a legally valid option agreement. There was also a legally valid exercise option agreement, legally enforceable as to each of those. [¶] Therefore, the cross-defendants are ordered, are hereby ordered to dismiss the Complaint and withdraw their claims for return of property, tender the funds and transfer said real property. That will be the verdict of the Court on the Cross-Complaint."

The trial court reserved entry of the judgment to a later date. During the hearing on the entry of judgment, plaintiffs asked the court to enter judgment as to the negligent misrepresentation verdict against the Company. Plaintiffs argued: "This is a unique situation, because both issues of law, the legal equity, were tried to the jury, but in this situation it's the Cross-Complaint, and to be specific here, . . . the verdict in favor of plaintiffs on the cause of negligent representation is a form of fraud. [¶] Case law is clear that negligent representation is a form of fraud and deceit . . . . [¶] It follows, Your Honor, that the jury's finding that the underlying exercise option agreement was prepared through fraud renders the contract invalid . . . . [¶] If there is no exercise option agreement, Your Honor, that's valid, the Court is without authority to enter into a judgment for awarding specific performance on the equity Cross-Complaint . . . ."

The trial court asked: "How is the fraud upheld as against [the Company] if . . . every single agent, director, representative of [the Company] was essentially exonerated

5

of any fraud, then how can the company itself [be held liable for fraud]? Doesn't it have to be through an agent or principal?"

Plaintiffs argued the jury "found that there was a fraud done through someone on behalf of [the Company]" and, because the verdict was a general verdict, "we have to specifically assume the jury found an agent of" the Company committed the negligent misrepresentation. Plaintiffs elaborated: "In this situation, we argued to the jury it was John Flournoy, and that's what the whole basis of the verdict, the general verdict is." Plaintiffs argued the trial court may "under certain circumstances . . . take an advisory upon the jury findings" but, when the legal issues are tried first and there are common issues of fact between the legal and equitable issues, the common factual issues are conclusively decided by the jury and the jury is not merely acting in an advisory capacity.

The trial court responded it was a separate fact finder and ruled: "The general verdicts were done because this Court, from the very beginning, had continually from day one asked that special forms be prepared, and ultimately th[at] just didn't happen, and then general verdict forms were presented that the parties agreed upon. [¶] The parties invited that, the general verdict forms, as they stood and went to this, this jury. [¶] This Court specifically asked before discharging the jury, was there any legal cause as to why the jury could not be discharged. Both sides answered, 'No.' [¶] The Court was very specific about that.

"The verdict form as to the finding against [the Company], this court determined on advice of the jury, that being, none of the principals were found to have done anything erroneous; then that as to [the Company], that verdict did not stand. [¶] There was no principal that did anything, according to the jury, did anything erroneous."

The trial court entered the judgment, which provides: "WHEREAS, all evidence in the jury trial was simultaneously heard by the Court as to the equity issue of specific performance on the Cross[-]Complaint, the Court rendered a verdict in favor of Cross[-]Complainant, [the Company], as against Cross-Defendants on the Cross-Complaint for

6

specific performance that stated: [¶] The Court ordered Plaintiffs/Cross-Defendants to dismiss the Complaint and withdraw their claims for return of property, tender the funds, and transfer said real property to Cross[-]Complainant [the Company]."

Plaintiffs appeal.

## DISCUSSION

Plaintiffs raise three issues on appeal. First, plaintiffs seek to reverse the judgment requiring them to dismiss their complaint and request we reinstate the jury verdict against the Company for negligent misrepresentation. Second, plaintiffs assert the trial court erred by substituting its "inconsistent ruling on the equitable cause of action" for specific performance and disregarding the jury's negligent misrepresentation verdict. Finally, plaintiffs challenge the trial court's exclusion of a video and testimony regarding statements Shirley made regarding the real property transaction. We find no merit in the last argument but agree with the first two arguments.

## I

### *The Trial Court Erred When It Effectively Set Aside*
### *The Jury's Negligent Misrepresentation Verdict*

Plaintiffs argue the trial court was bound by the jury's negligent misrepresentation verdict because plaintiffs were entitled to a jury trial on that issue and the jury's verdict was thus not advisory. Defendants argue the trial court was correct in finding the jury's negligent misrepresentation verdict was invalid because the verdict was "not factually supported by the evidence." We agree with plaintiffs that the trial court had no equitable or inherent authority to set aside the jury's verdict.

"It has long been held that, 'where a party is entitled to a jury as a matter of right, the court is without authority to enter a judgment contrary to the verdict and that *the determination of a jury is conclusive unless set aside upon the granting of a motion for a new trial or unless the general verdict is inconsistent with special findings of fact made by the jury.*' " (*Hoopes, supra*, 168 Cal.App.4th at p. 156, italics added.) In this case,

7

plaintiffs' negligent misrepresentation claim unquestionably was a claim at law subject to the right to a jury trial. (See *Fireman's Fund Ins. Companies v. Younesi* (1996) 48 Cal.App.4th 451, 458 ["Actions to recover damages for fraud are at law in which a right to a jury trial exists"]; *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 403 [negligent misrepresentation is a form of fraud].) There were no special findings that could have rendered the general verdict inconsistent—the jury used only a general verdict form. There was also no motion for a new trial pending before the trial court when it ruled that plaintiffs had to dismiss their complaint. The trial court thus had no legal authority to set aside the jury's verdict.

We accordingly reverse the trial court's judgment and direct the trial court to enter judgment in favor of plaintiffs and against the Company, as provided in the jury's negligent misrepresentation verdict.

II

*The Matter Is Remanded For Reconsideration Of The Cross-Complaint*

Plaintiffs argue the trial court rendered an "inconsistent ruling on the equitable cause of action" in the cross-complaint because the trial court disregarded the jury's negligent misrepresentation verdict. They assert the jury's finding "that Shirley executed the underlying exercise option agreement and transferred ownership of her home and property as a result of fraud and deceit rendered the agreement void and unenforceable." Plaintiffs request that we remand the matter for further proceedings consistent with the jury's verdict. Defendants argue the jury's negligent misrepresentation finding did not foreclose the trial court's ruling on the validity of the Option Agreement and the Exercise Agreement. We conclude the trial court misunderstood the scope of its discretion and the matter must thus be remanded for reconsideration.

"Historically, there were separate law and equity courts. [Citation.] The law courts dealt with ordinary property rights, debts, and trespasses and adjudicated disputes by live testimony before a lay jury. [Citation.] The equity courts dealt with ethical

8

matters and adjudicated disputes by written testimony before a judge. [Citation.] The separate law and equity courts were merged, but the distinction between law and equity remains to this day. The right to a jury trial for civil actions is generally limited to those causes of action (and their analogues) that were historically triable in a court of law. [Citations.] Those causes of action that were historically tried to a judge remain triable to a judge today because it is thought that the exercise of equitable powers 'depend[s] upon skills and wisdom acquired through years of study, training and experience which are not susceptible of adequate transmission through instructions to a lay jury.' [Citation.]

"While the judge determines equitable causes of action, the judge may (in rare instances) empanel an advisory jury to make preliminary factual findings. [Citation.] The factual findings are purely advisory because, on equitable causes of action, the judge is the proper fact finder. [Citation.] '[W]hile a jury may be used for advisory verdicts as to questions of fact [in equitable actions], it is the duty of the trial court to make its own independent findings and to adopt or reject the findings of the jury as it deems proper.' [Citation.] In contrast, a judge is bound by a jury's verdict rendered on legal causes of action. [Citation.] A jury is not 'a mere advisory body' in deciding legal causes of action. [Citation.] It has long been held that, 'where a party is entitled to a jury as a matter of right, the court is without authority to enter a judgment contrary to the verdict and that the determination of a jury is conclusive unless set aside upon the granting of a motion for a new trial or unless the general verdict is inconsistent with special findings of fact made by the jury.' [Citation.]

"Complications arise when legal and equitable issues (causes of action, requested remedies, or defenses) are asserted in a single lawsuit. The lawsuit is rarely treated as a single unit for purposes of determining the right to a jury trial. [Citations.] In most instances, separate equitable and legal issues are 'kept distinct and separate,' with legal issues triable by a jury and equitable issues triable by the court. [Citations.]

9

"The order of trial, in mixed actions with equitable and legal issues, has great significance because the first fact finder may bind the second when determining factual issues common to the equitable and legal issues." (*Hoopes*, *supra*, 168 Cal.App.4th at pp. 155-156.) In cases where legal issues are tried before equitable ones (as was done here), it is "clear that a jury's determination of legal issues may curtail or foreclose equitable issues" (*id.* at p. 157) and "the trial court must follow the jury's factual determinations on common issues of fact" (*id.* at p. 158).

"[T]here are solid policy reasons for giving one fact finder's determinations binding effect in a mixed trial of legal and equitable issues. The rule minimizes inconsistencies, and avoids giving one side two bites of the apple. [Citation.] The rule also prevents duplication of effort." (*Hoopes*, *supra*, 168 Cal.App.4th at p. 158.)

It is clear from the trial court's ruling that it misunderstood the scope of its discretion when it ruled on the Company's specific performance claim following the jury's verdict. The trial court viewed the jury's verdict as advisory rather than binding. The trial court thus did not consider whether the factual findings underlying the jury's finding of negligent misrepresentation impacted the equitable relief requested in the cross-complaint—i.e., whether the verdict impacted the validity and enforceability of the Option Agreement or Exercise Agreement.[4] " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 25.)

---

**4** Based on the parties' briefs, it appears the negligent misrepresentation finding may pertain, if at all, only to the Exercise Agreement. The parties have not, however, provided record citations from which to glean this information, nor have they provided copies of the relevant pleadings. We thus are unable to determine the basis for plaintiffs' negligent misrepresentation claim.

We do not speculate regarding nor render any opinion as to the impact of the jury's verdict on the claim for specific performance, if any. We remand for the trial court to reconsider its ruling on the cross-complaint in accordance with this opinion.

## III

### *Sufficient Evidence Supports The Trial Court's Exclusion Of The Video*

Plaintiffs challenge the trial court's application of Penal Code section 632 (section 632) to exclude the video that Ristau filmed of a conversation between himself and Shirley regarding the transfer of the home (excluded video). Plaintiffs argue the conversation was not a confidential communication within the meaning of section 632. Defendants disagree. We conclude there is sufficient evidence to support the trial court's application of section 632, subdivision (d) to exclude the video as evidence. (*Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1466 [applying sufficiency of the evidence standard of review]; *People v. Pedersen* (1978) 86 Cal.App.3d 987, 993-994 [same].)

### A

### *Additional Factual Background*

### 1

### *The Excluded Video*

The approximately 20-minute video commences with Ristau sitting at, what appears to be, a dining room table or kitchen counter with a stack of papers from a title company. Shirley walks up to the table/counter and takes a seat beside him. The camera angle moves back and forth between the papers on the table/counter and Shirley. During the conversation, Shirley looks at Ristau, looks at the papers on the table/counter, and looks off in various directions, including in the general direction of the camera.

Ristau and Shirley talk about the title documents, how and why Shirley signed the paperwork, and whether Shirley intended to sell her home. Shirley tells Ristau that it was John's idea to transfer the home and she understood the house was hers until her death.

11

Shirley says, however, that she does not "understand the whole thing." When Ristau presses that he does not understand why the property would be transferred prior to Shirley's death, Shirley responds: "We can go tomorrow, probably, to the title company and have him, or her, or whomever, what [*sic*] this is all about." She again later reiterates that they can go to the title company the next day and have someone there explain the paperwork.

Ristau and Shirley discuss how "the man" (presumably John) may be taking advantage of Shirley and whether Shirley believes her friend, Frieda, was taking advantage of her as well. They then again discuss the escrow, whether Shirley intended to sell the home, and why she signed the paperwork.

2

*The Trial Court's Ruling*

Defendants filed a motion in limine "to exclude video evidence of the March 19, 2018, video taken by Keith Ristau." Defendants asked to be heard on the motion before opening statements. Plaintiffs argued Ristau received permission from Shirley "to forward that conversation" between them. After hearing defendants' argument, the trial court ruled, "Based on the representations, I am going to allow it."

The next day, defendants asked to again be heard regarding the admissibility of the video. Defendants argued that, despite plaintiffs' counsel "affirmative confirmation of his obligation to this Court that Keith Ristau asked Shirley Wright for her permission to record," Ristau, in his deposition, testified he did not ask Shirley whether he could "film" her and he did not let her know that he was "filming" her. Plaintiffs' counsel responded the deposition testimony was unclear and incomplete and Ristau was intending to testify at trial that he asked Shirley if he could "record her" and she "responded with the words, 'Okay.' " Plaintiffs' counsel explained Ristau "only asked it after the fact, after he started recording." The trial court asked whether that conversation was captured on the video; plaintiffs' counsel responded it was not but the issue "goes to the weight of the

12

evidence, not the admissibility." The trial court disagreed and asked to see Ristau's deposition transcript.

While the trial court was reviewing the deposition transcript, it listened to further argument. The parties submitted their argument, whereafter the trial court moved on to another issue, which it ruled upon. The trial court then called a recess and said it was "going to take a look at something else on this other issue."

After recess, the trial court quoted section 632 and said: "We have these cases all the time where somebody sets up a video in a disgusting, despicable way in a women's locker room and obtains video footage, and there isn't audio to it, but that's -- still, what this is trying to protect is an invasion of one's privacy. There is perhaps no greater expectation of privacy that one has than to communicate in their own home in a way that they believe within their castle their communications are confidential, unless shown otherwise. [¶] The question as to whether or not he got permission to film, and to split hairs ala President Clinton, it depends on what is is and what is means. This court isn't going there. [¶] It's pretty clear. [¶] He was filming. It's pretty clear to this Court from your representation that's what happened. He had his cell phone out and he was filming her. [¶] Do you want to call it recording? Call it recording. I call it both recording and filming, because it's video that you have represented we were going to see. [¶] So at least to that extent it's disingenuous for him to say, well, let me think now on this question. I was filming but I am not going to tell them that, because they didn't ask me that, because I was actually recording, as well, so his answer in that respect is disingenuous. He was filming and he knew it from the literal sense; otherwise, we wouldn't have a video here. [¶] That evidence is excluded."

B

*Sufficient Evidence Supports The Trial Court's Finding That Section 632 Applied*

Section 632 "prohibits the intentional recording of a 'confidential communication' without the consent of all parties to the communication." (*Hataishi v. First American*

13

*Home Buyers Protection Corp.*, *supra*, 223 Cal.App.4th at p. 1463.) "[T]he statute prohibits monitoring and recording only 'without the knowledge or consent of all parties to the conversation' [citation] and only ' "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded" ' [citation]." (*Id*. at p. 1465.) Except to prove a violation of section 632, evidence obtained in violation of section 632 "is not admissible in any judicial, administrative, legislative, or other proceeding." (*Id*., subd. (d).) We review the trial court's application of section 632, subdivision (d) for substantial evidence. (*Hataishi*, at p. 1466; *People v. Pedersen*, *supra*, 86 Cal.App.3d at pp. 993-994.)

The existence of substantial evidence is determined as follows: "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion*." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)

Plaintiffs initially assert, "The situations contemplated by this criminal statute and the cases referenced by the Trial Court of a criminal perpetrator setting up a video in a disgusting, despicable way in a women's locker room are a far cry from the circumstances of this case." This assertion does not assist us in determining whether there is substantial evidence to support the trial court's ruling. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [" ' "Arguments should be tailored according to the applicable standard of appellate review" ' "].)

14

Plaintiffs next argue: "The Trial Court did not consider whether this conversation while the phone was held a foot or so in front of Shirley Wright's face was carried on in circumstances reasonably indicating that either party desired it to be confined to the two of them. By Shirley's own statements in the video, she was the one who suggested that they go . . . to Placer Title Company so they could explain to her and her nephew why she signed her ranch over to [the Company] a few weeks prior." They further argue, "[I]t seems unlikely that [the trial court viewed the video] because the video shows Mr. Ristau held the phone videotaping a few feet in front [of] his aunt's face, either pointed directly at her or at times pointing down at various papers as they went through them and talked. She looked at the camera and appears to gesture to it."

There are several problems with plaintiffs' argument. First, we do not speculate about what the trial court did or did not do. The record is silent as to whether the trial court reviewed the video. We note, however, the trial court said it was "going to take a look at something else" during recess. "[I]t is settled that: 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.)

Second, plaintiffs fail to provide a proper statement of facts pertaining to the trial court's ruling; indeed, they fail to note Ristau's deposition testimony, upon which the trial court relied. "An appellant who fails to cite and discuss the evidence supporting the [trial court's ruling] cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the [ruling]. An appellant, . . . who cites and discusses only evidence in her [or his or their] favor fails to

15

demonstrate any error and waives the contention that the evidence is insufficient to support the [ruling]." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)

Third, the trial court, in rendering its ruling, noted the location of the recording—Shirley's home—and Ristau's deposition testimony that he did not ask Shirley whether he could film her. We agree with the trial court that a person generally has an objectively reasonable expectation of privacy in his, her, or their home that a conversation is not being overheard or recorded, absent evidence to the contrary. (Cf. *Mezger v. Bick* (2021) 66 Cal.App.5th 76, 88-89 [words and phrases spoken at elevated volumes in an outdoor residential setting were not confidential communications within the meaning of section 632].) Here, there was no evidence to the contrary. Shirley's statements that she and Ristau could go to the title company for an explanation regarding the nature of the transaction in no way indicate that Shirley had an expectation that the conversation between her and Ristau in her home would be overheard or recorded. The video footage further shows Ristau held the phone upright on the table/counter as he was looking at the paperwork and talking to Shirley. Holding the phone in that manner, by itself, does not conclusively establish Shirley knew she was being recorded. We are unable to discern that Shirley looked directly at the phone and recognized she was being recorded. Because the trial court's finding is supported by substantial evidence, we find no error and do not address plaintiffs' prejudice argument pertaining to this video advanced in a separate section of their brief.

IV

*Plaintiffs Have Failed To Demonstrate Prejudice*

*Regarding The Trial Court's Exclusion Of Other Testimony*

Plaintiffs argue the trial court abused its discretion when it excluded testimony regarding Shirley's statements pertaining to the house transfer on hearsay grounds. We do not address the substantive argument because plaintiffs have failed to establish prejudice. (Cal. Const., art. VI, § 13 [no reversal of judgment for erroneous evidentiary

16

ruling absent a showing of miscarriage of justice]; *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1038 [prejudice from an evidentiary ruling is not presumed; the burden is on the party challenging the ruling to demonstrate affirmatively the error was prejudicial].) To show prejudice, plaintiffs must demonstrate it " 'appears reasonably probable that were it not for the error a result more favorable to the appellant could have been obtained.' " (*Candelaria v. Avitia* (1990) 219 Cal.App.3d 1436, 1444.)

Plaintiffs assert the jury was precluded from hearing "testimony regarding [Shirley's] statements to her nephew or others." Plaintiffs do not, however, explain exactly what testimony was excluded and how the excluded testimony prejudiced them in light of *the other testimony in the record*. Indeed, plaintiffs note, "[T]he first witness of the trial discuss[ed] the video and [Shirley's] statements." Without a discussion of the testimony presented at trial, we are unable to determine whether, had error occurred, it is reasonably probable plaintiffs would have obtained a more favorable result. The burden of demonstrating prejudice lies with plaintiffs. "It is the duty of counsel to refer us to the portion of the record supporting his contentions on appeal." (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) "It is not incumbent upon this court to search a record of this character to determine a point raised in this manner." (*Erro v. City of Santa Barbara* (1932) 123 Cal.App. 508, 513; see *In re Marriage of Fink* (1979) 25 Cal.3d 877, 888 ["It is neither practical nor appropriate for us to comb the record on [an appellant's] behalf"].)

Plaintiffs also briefly state the jury was not allowed to hear plaintiffs' "retained neuropsychologist testify regarding how [Shirley] outwardly exhibited her cognitive deficits and level of dementia." Plaintiffs, however, provide no record citation pertinent to the ruling, and we thus cannot review the grounds for the trial court's ruling to determine whether the trial court erred. In the absence of an affirmative showing of error in that regard, there can be no prejudice.

17

Finally, plaintiffs assert they were "prevented from cross-examining all of the defendants regarding Shirley Wright's confusion, inability to understand, and memory lapses about events from days prior, as seen in the video and their own conduct." Plaintiffs again fail to provide record citations pertinent to the argument. We are unable to determine whether the questions on cross-examination were precluded solely on hearsay grounds, and whether the scope of the excluded testimony in light of the evidence admitted at trial indicates a reasonable probability that plaintiffs would have obtained a more favorable result if error occurred.

Based on the foregoing, even if error occurred, no relief is available because plaintiffs have failed to establish prejudice.

DISPOSITION

The judgment is reversed with a directive for the trial court to issue a judgment in favor of plaintiffs and against the Company, as provided in the jury's negligent misrepresentation verdict. Upon entry of the judgment in that regard, the Company may pursue any relief it otherwise has to challenge the judgment. The matter is further remanded for the trial court to reconsider its ruling on the cross-complaint consistent with this opinion. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


    /s/                       
ROBIE, Acting P. J.


We concur:


  /s/                    
RENNER, J.


  /s/                    
KRAUSE, J.