Filed 12/26/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RINCON EV REALTY LLC et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CP III RINCON TOWERS, INC., et al., <br><br>     Defendants and Respondents. | A152935 <br><br> (City & County of San Francisco <br> Super. Ct. No. CGC10496887) |

After a bench trial in this commercial real estate dispute, the trial court (Hon. Marla Miller) entered judgment for defendants on all claims, some legal and some equitable.[1]  Plaintiffs appealed the judgment, and we reversed as to the legal claims (holding plaintiffs' demand for a jury trial as to those claims should not have been stricken), affirmed as to the equitable claims, and remanded for further proceedings. (*Rincon I, supra,* 8 Cal.App.5th at pp. 5, 22.)  On remand, the trial court (Hon. Harold Kahn) granted summary judgment for defendants, concluding Judge Miller's findings

---

[1] The background of the parties' dispute and the resulting litigation (some of which we discuss further below) is set forth in this court's opinion addressing an earlier appeal in this matter.  (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2017) 8 Cal.App.5th 1, 5–7 (*Rincon I*).)  The plaintiffs are Rincon EV Realty LLC, Rincon ET Realty LLC and Rincon Residential Towers LLC.  (*Id.* at p. 5.)  The defendants are (1) CP III Rincon Towers, Inc. (CP III), (2) other "Carmel Partners" entities (Carmel Partners, Inc.; Carmel Partners, LLC; Carmel Management, LLC; and Carmel Partners Investment Fund III, L.P.), (3) U.S. Bank National Association (USB) as trustee for the Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 (the Maiden Lane Trust), (4) the Maiden Lane Trust, and (5) Maiden Lane LLC.  (*Id.* at pp. 6–7.)

pertaining to the equitable claims were binding and were dispositive of plaintiffs' legal claims.

Plaintiffs appeal the ensuing judgment, contending that, on remand after *Rincon I*, they were entitled to a jury trial on their legal claims. Specifically, plaintiffs argue that (1) after this court's partial reversal in *Rincon I*, they were entitled to litigate anew all factual issues relevant to the legal claims, even if the same issues were determined by Judge Miller in connection with her resolution of the equitable claims, (2) by granting defendants' summary judgment motion, Judge Kahn violated this court's remittitur in *Rincon I* and the law of the case, (3) under the statutes governing judicial notice and summary judgment procedure, Judge Kahn, in ruling on defendants' motion, could not consider the "truth" of the facts found by Judge Miller, and (4) even if Judge Miller's findings were properly considered on remand and had binding effect, those findings do not dispose of plaintiffs' legal claims. We reject plaintiffs' arguments and will affirm the judgment.

## I. BACKGROUND

"[Plaintiffs] borrowed $110 million in 2007 from Bear Stearns Commercial Mortgage, Inc. (Bear Stearns) to finance the purchase of Rincon Towers, a San Francisco apartment complex (the Property). In 2010, after plaintiffs failed to repay the loan and after changes in the ownership of the loan, defendant CP III Rincon Towers, Inc. (CP III) purchased the Property at a nonjudicial foreclosure sale. Plaintiffs sued CP III and seven other entities who were involved in administering the loan, unsuccessful workout negotiations, and the eventual foreclosure sale, alleging various causes of action, some legal (breach of contract, fraud, slander of title, trade secret misappropriation), and some equitable (unfair competition, to set aside the foreclosure sale, and for an accounting)." (*Rincon I, supra,* 8 Cal.App.5th at p. 5.)

Specifically, plaintiffs' fifth amended complaint, the operative complaint at trial, asserted the following causes of action: (1) breach of a loan agreement (Loan Agreement) entered at the time of the loan (the Loan) in June 2007, (2) breach of a cash management agreement (Cash Management Agreement) entered into by plaintiffs and

2

Bear Stearns concurrently with the Loan Agreement, (3) breach of a March 2009 prenegotiation agreement entered into by plaintiffs and the Maiden Lane Trust (an entity that became the lender after Bear Stearns's 2008 collapse) in connection with negotiations about a possible modification of the Loan, (4) fraud, (5) to set aside the foreclosure, (6) unfair competition (Bus. & Prof. Code, § 17200 et seq.) (the Unfair Competition Law (UCL)), (7) slander of title, (8) violation of the Uniform Trade Secrets Act (UTSA) (Civ. Code, § 3426 et seq.), and (9) accounting. (*Rincon I, supra,* 8 Cal.App.5th at p. 7.) In their UCL cause of action, plaintiffs alleged in part that the conduct supporting several of their other causes of action (including defendants' alleged breaches of contract, fraud, slander of title and violation of the UTSA) also violated the UCL.

Plaintiffs sought a jury trial as to six of these claims—the three breach of contract claims, as well as the claims for fraud, slander of title and violation of the UTSA (the legal claims). (*Rincon I, supra,* 8 Cal.App.5th at p. 9.) As to their other three claims—to set aside the foreclosure, for unfair competition, and for an accounting (the equitable claims)—plaintiffs did not seek a jury trial and agreed those claims were " 'equitable in nature.' " (*Ibid.*) In response to a motion by defendants, Judge Miller struck plaintiffs' jury demand based on jury waiver provisions in the three contracts at issue, the Loan Agreement, the Cash Management Agreement and the prenegotiation agreement. (*Ibid.*) According to the register of actions that is included in the appellate record, Judge Miller also denied or took off calendar two motions by defendants to bifurcate or sever certain issues to be tried separately (the second time on the ground that bifurcation was moot in light of the order striking the jury demand).

Judge Miller held a bench trial, issued a detailed statement of decision rejecting all of plaintiffs' claims, and entered judgment for defendants. (*Rincon I, supra,* 8 Cal.App.5th at pp. 5, 10.) Plaintiffs appealed. (*Id.* at p. 5.)

In *Rincon I*, we concluded Judge Miller erred by striking plaintiffs' jury demand as to the legal claims, and we therefore reversed the judgment as to those claims. (*Rincon I, supra,* 8 Cal.App.5th at pp. 5, 10, 18, 21–22.) We concluded, however, there

3

was no error as to the equitable claims, and we affirmed the judgment as to those claims. (*Id.* at pp. 5, 18–19, 22.)  We remanded for further proceedings as to the legal claims. (*Id.* at pp. 5, 22.)

On remand, defendants filed a motion for summary judgment, contending in part that the findings Judge Miller made in connection with her resolution of plaintiffs' equitable claims were "binding on, and dispositive of, plaintiffs' remaining legal claims." After a hearing, Judge Kahn granted the motion, concluding Judge Miller's findings in connection with plaintiffs' equitable claim for unfair competition (the UCL claim) necessarily resolved plaintiffs' legal claims.  In reaching this conclusion, Judge Kahn relied on the principle that, in a case involving both legal and equitable claims, findings made in connection with one set of claims are binding in a subsequent disposition of the other set of claims.[2]  (E.g., *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 156–157 (*Hoopes*).)

In his written ruling, Judge Kahn stated in part:  "Both the fifth amended complaint and plaintiffs' post-trial brief . . . make clear, and plaintiffs do not dispute, that all of the substantive law allegations of their six legal claims are also alleged as grounds that defendants violated the UCL.  [Citations.]  Because the alleged substantive law violations of the six legal claims were subsumed within the UCL claim, Judge Miller's findings resolving the entirety of the UCL claim in favor of defendants necessarily also resolved all six of plaintiffs' legal claims in favor of defendants, and a plain reading of [Judge Miller's] Statement of Decision shows that this is what happened.  [Citation.]  Among other things, as part of her ruling on the UCL claim, Judge Miller found that defendants did not breach any of the three contracts that they were alleged to have breached, did not commit any fraudulent conduct against the plaintiffs, did not slander

_____

[2] In their summary judgment motion, defendants also argued judgment in their favor was appropriate on the alternative ground of collateral estoppel.  Judge Kahn did not reach that argument.  Because we affirm on the ground addressed by Judge Kahn, we need not address defendants' argument that collateral estoppel provides an alternative basis for affirmance.

4

plaintiffs' title to the property and did not misappropriate any of plaintiffs' asserted trade secrets."

Judge Kahn entered judgment for defendants, and plaintiffs appealed.

## II. DISCUSSION

### A. When an Action Involves Both Legal and Equitable Claims, Findings Pertaining to One Set of Claims Are Binding in the Subsequent Resolution of the Other Set of Claims

As we noted in *Rincon I*, "[w]hile a litigant in a civil action generally has a constitutional right to jury trial on 'legal' causes of action, there is no such right with respect to 'equitable' causes of action [citation], or 'equitable' remedies [citation]." (*Rincon I, supra,* 8 Cal.App.5th at p. 19.) For that reason, we held that, although it was error to strike plaintiffs' jury demand as to their legal claims, Judge Miller did not err in deciding the equitable claims. (*Id.* at pp. 18–19.) We also noted that, under established California precedent, when a case involves both legal and equitable claims or issues, the trial court " ' "may decide the equitable issues first, and this decision may result in factual and legal findings that effectively dispose of the legal claims." ' "[3] (*Rincon I, supra,* 8 Cal.App.5th at p. 19; accord, e.g., *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 (*Raedeke*); *Alcoa, supra,* 12 Cal.App.5th at p. 355; see *Hoopes, supra,* 168 Cal.App.4th at p. 158 ["The rule minimizes inconsistencies, and avoids giving one side two bites of the apple. [Citation.] The rule also prevents duplication of effort."].)

Judge Kahn concluded that this was in effect what happened here, i.e., the equitable claims were decided first, when Judge Miller addressed them in her statement

---

[3] California courts have stated the " 'better practice' is for 'the trial court [to] determine the equitable issues before submitting the legal ones to the jury' " (*Hoopes, supra*, 168 Cal.App.4th at p. 157) and have referred to this approach as the " ' "equity first" rule' " (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 355 (*Alcoa*)). But the same preclusion principle applies when the legal claims are decided first by a jury, i.e., the jury's findings are binding in the trial court's subsequent disposition of the equitable claims. (*Hoopes, supra,* at p. 157.)

of decision. On remand after our decision in *Rincon I*, with only the legal claims remaining for resolution, Judge Kahn noted that "[t]he present posture of this case is analogous to a bifurcated trial." He therefore applied the preclusion principle noted above and concluded the findings Judge Miller made when resolving the equitable claims also disposed of the legal claims.

On appeal, plaintiffs acknowledge the general applicability of the preclusion rule invoked by Judge Kahn. Plaintiffs state in their opening appellate brief that, "[a]bsent exceptional circumstances, factual findings by the factfinder in the first phase of the trial (either the judge or jury) are binding on the factfinder in the second phase. [Citations.] This may mean that findings from the first phase of trial obviate the need for the second phase." As noted, however, plaintiffs argue that, for several reasons, this rule should not apply here, or, if it does apply, it does not entitle defendants to judgment. We initially address (in part II.B below) the parties' arguments as to whether Judge Miller's findings pertaining to the equitable claims (assuming they are binding) are dispositive of plaintiffs' legal claims. We then address (in parts II.C–II.E below) plaintiffs' contention that, in the circumstances of this case, the usual preclusion rule applied by Judge Kahn should not apply and Judge Miller's findings pertaining to the equitable claims should not be given binding effect.

## B. Judge Miller's Findings Pertaining to the Equitable Claims Are Dispositive of the Legal Claims

Judge Kahn correctly determined that Judge Miller's findings in connection with plaintiffs' equitable UCL claim disposed of plaintiffs' six legal claims. The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "The UCL's 'unlawful' prong 'borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.' [Citation.] ' "[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] . . . 'unlawful' [prong] violation." ' " (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1155.) A UCL claim brought by a private plaintiff is an equitable cause of action, even when it is based

6

on an underlying violation that is legal in nature.[4] (*Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284.)

In their UCL cause of action, plaintiffs invoked all three prongs of the UCL, alleging defendants' conduct was unlawful, unfair, and fraudulent. As to the unlawful prong, plaintiffs incorporated their other claims, including all six of their legal claims, contending defendants' acts and practices were "unlawful" for purposes of the UCL because they constituted breaches of contract, fraud, slander of title, and violated the UTSA. Plaintiffs made a similar argument in their post-trial brief following the bench trial before Judge Miller, asserting defendants' unlawful acts included their alleged breaches of contract, slander of title, and violation of the UTSA, while asserting that the alleged misrepresentations and nondisclosures that formed the basis of their common law fraud claim established defendants' liability under the fraudulent prong of the UCL as well.

In her statement of decision, Judge Miller addressed all three prongs of the UCL when she resolved plaintiffs' claim under that statute. After concluding plaintiffs failed to establish defendants' conduct was unfair within the meaning of the UCL, Judge Miller turned to the fraudulent prong and found there was "no evidence supporting the allegations of fraudulent acts or practices." Judge Miller expressly found there was no merit in the fraud allegations asserted both in connection with plaintiffs' separate fraud claim and in support of their claim of fraudulent conduct under the UCL. Finally, as to the unlawful prong of the UCL, Judge Miller stated plaintiffs "failed to prove unlawful conduct," as they had not established any of "the alleged violations of law" cited in their post-trial brief (a list of violations that, as noted, included defendants' alleged breaches of contract, slander of title, and violation of the UTSA).

---

[4] The situation is different when the government brings a UCL claim for civil penalties, historically a legal claim as to which there is a right to a jury trial. (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2018) 24 Cal.App.5th 438, 454–455, review granted September 19, 2018, S250047.)

In ruling on plaintiffs' equitable claim under the UCL, Judge Miller thus addressed whether each of plaintiffs' six legal claims had merit. She expressly concluded none of them did. Judge Kahn correctly ruled these determinations dispose of plaintiffs' legal claims. There was nothing left to be submitted to a jury.

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs assert Judge Miller's findings on the equitable UCL claim do not dispose of the legal claims because in her statement of decision Judge Miller "applied different standards [to the UCL claim] from those that would be relevant to the legal claims." Plaintiffs cite a portion of the statement of decision in which Judge Miller states that plaintiffs did not meet what she concluded was the applicable standard for determining whether an act or practice is "unfair" within the meaning of the UCL, i.e., conduct that " 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' " (Citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187.) Plaintiffs argue such a showing was not an element of any of their legal claims, so Judge Miller's finding that they did not meet the *Cel-Tech* standard does not establish that they cannot prevail on those claims.

This argument is misplaced. As noted, Judge Miller did not limit her analysis to whether plaintiffs had proven "unfairness" under the UCL. Instead, she addressed plaintiffs' claims under all three prongs of the statute, and she expressly concluded plaintiffs had not established the purported misconduct that supported both their legal claims and the "unlawful" and "fraudulent" branches of their equitable UCL claim.

In their reply brief, plaintiffs suggest Judge Miller's rulings on the "unlawful" and "fraudulent" prongs of the UCL did not encompass rulings on the merits of their breach of contract and fraud claims, because, they assert, (1) Judge Miller adopted an argument made by defendants that a breach of contract, without more, could not support UCL liability, and (2) Judge Miller's analysis of the "fraudulent" prong of the UCL was limited to whether defendants had deceived the general public. Plaintiffs are incorrect.

8

In her statement of decision, Judge Miller did not reject plaintiffs' claim under the "unlawful" prong of the UCL on the ground that a breach of contract could not support liability under that prong. Instead, she ruled categorically that none of the "alleged violations of law" identified by plaintiffs (a list that included alleged breaches of contract) had been established. And as to fraud, Judge Miller did not limit her discussion to a conclusion that plaintiffs had not deceived the general public. She went on to hold specifically that the fraudulent inducement allegations asserted in support of both the fraud and UCL causes of action were "without merit."

Finally, focusing on the organization of Judge Miller's written statement of decision, plaintiffs note in their reply brief that Judge Miller included many of her more specific findings about whether plaintiffs had established their claims—such as her findings that plaintiffs did not meet the conditions for an extension of the Loan's maturity date, that plaintiffs breached the Loan Agreement by not repaying the Loan and by other conduct, that defendants did not fraudulently induce plaintiffs into entering the prenegotiation agreement or into paying taxes for the Property, and that plaintiffs did not establish damages—in the portions of the statement of decision addressing plaintiffs' legal claims, including their claims for breach of contract and fraud. But we reject plaintiffs' suggestion that this method of organizing the statement of decision means Judge Miller only made substantive findings in connection with the legal claims and not in connection with the UCL claim.

As Judge Kahn correctly noted at the hearing on defendants' summary judgment motion, the structure of Judge Miller's statement of decision was a result of the way plaintiffs presented their case. Judge Miller addressed plaintiffs' causes of action in the order in which they were pled in the fifth amended complaint, with headings for the different causes of action. To the extent certain findings pertained both to a legal cause of action and to the equitable UCL claim that incorporated the legal cause of action, it was not necessary for Judge Miller to repeat all the findings under both headings.

9

**C. Judge Kahn Did Not Disregard the *Rincon I* Remittitur or the Law of the Case**

Plaintiffs argue that Judge Kahn, by determining that Judge Miller's findings were binding and disposed of plaintiffs' legal claims, misinterpreted or disregarded this court's disposition in *Rincon I* and the "law of the case" as established by our *Rincon I* opinion. We disagree.

" 'A reviewing court has authority to "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code Civ. Proc., § 43.) The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned.' [Citations.] 'The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void.' " (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.)

In addition to following the appellate court's remittitur, a trial court on remand must comply with the law of the case. " ' "The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." ' " (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.)

Here, based on his reading of our opinion in *Rincon I*, Judge Kahn concluded he had authority to consider Judge Miller's findings pertaining to the equitable claims and to determine that those findings disposed of the legal claims. "Whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review. [Citations.] [¶] Our remittitur directions are contained in the dispositional language of our previous opinion. [Citation.] The trial court's interpretation of those directions is not binding on us. [Citation.] We look to the wording of our directions to determine whether the trial court's order comports with them. [Citation.] When, as in this case, the reviewing court

10

remands the matter for further proceedings, its directions must be read in conjunction with the opinion as a whole." (*Ayyad v. Sprint Spectrum, L.P.*, *supra*, 210 Cal.App.4th at p. 859.)

The language of the *Rincon I* disposition and opinion establishes Judge Kahn acted within the permitted scope of jurisdiction on remand. In *Rincon I*, we stated in the disposition: "The judgment is reversed as to plaintiffs' claims for breach of contract, fraud, slander of title, and violation of the UTSA (the first, second, third, fourth, seventh and eighth causes of action in the fifth amended complaint) and the case is remanded for *further proceedings consistent with this opinion* as to those causes of action. The judgment is affirmed as to plaintiffs' claims to set aside the foreclosure sale, for unfair competition, and for an accounting (the fifth, sixth and ninth causes of action in the fifth amended complaint). The parties shall bear their own costs on appeal." (*Rincon I*, *supra*, 8 Cal.App.5th at p. 22, italics added.)

In footnote 12 of the *Rincon I* opinion (footnote 12), we addressed the parties' arguments about whether defendants' success in connection with the equitable claims would have an impact on resolution of the legal claims on remand. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 20, fn. 12.) We stated in footnote 12: "Defendants assert that, on remand, the trial court's previously entered judgment on the equitable claims would likely require the court to enter summary judgment for them on any remaining legal claims. Plaintiffs disagree, contending even the present judgment on the equitable claims would not eliminate their right to submit some issues to a jury. We need not address this issue, except to point out the fact we reverse in part for lack of an enforceable jury waiver does not mean the plaintiffs are necessarily entitled to a jury trial on their remaining legal claims. On remand, defendants may submit to the trial court any [Code of Civil Procedure] section 437c motion or other form of dispositive motion they may wish to file. We express no view about whether the grounds relied upon by the trial court for rejecting any of plaintiffs' claims—equitable or legal—might justify granting such a motion." (*Rincon I*, *supra*, at p. 20, fn. 12.)

11

We thus did not determine in *Rincon I* whether Judge Miller's findings on the equitable claims disposed of plaintiffs' legal claims, but in footnote 12 we permitted defendants to present that question on remand, and we authorized the trial court to decide it. Accordingly, in the language of our *Rincon I* disposition, Judge Kahn's determination of the preclusive effect of Judge Miller's findings was a proceeding "consistent with" the opinion in *Rincon I.* (*Rincon I*, *supra*, 8 Cal.App.5th at p. 22.) And for the reasons discussed in part II.B above, we conclude Judge Kahn's resolution of that preclusion issue was correct.

Plaintiffs assert Judge Kahn's ruling was in effect a finding that Judge Miller's error in striking plaintiffs' jury demand was "harmless," contrary to our determination in *Rincon I* that the error in striking the demand was per se reversible. Specifically, plaintiffs contend that, in *Rincon I*, "this court determined—and it is law of the case— that the record before it was insufficient to support judgment in favor of [defendants] on [plaintiffs'] six Legal Claims."

We disagree. In the bench trial, Judge Miller, pursuant to the contractual jury waivers, addressed and resolved the legal claims on the merits. (*Rincon I, supra,* 8 Cal.App.5th at pp. 9–10.) In *Rincon I*, we concluded (1) the jury waivers were unenforceable, so it was error to strike plaintiffs' jury demand (*id.* at pp. 10–18), and (2) the error was of a type that required reversal as to the legal claims without a showing of prejudice by plaintiffs (i.e., a showing that they would have fared better if their legal claims had been submitted to a jury) (see *id.* at pp. 18–19). In addressing the latter point, we stated in part: " 'Denial of the right to a jury trial is reversible error per se, and no showing of prejudice is required of a party who lost at trial.' [Citation.] Accordingly, when a trial court erroneously deprives a party of a jury trial on a cause of action the party was entitled to submit to a jury, reversal of the judgment on that cause of action is required." (*Id.* at p. 18.)

Our partial reversal in *Rincon I* thus was based on the type of error involved; it was not based on an assessment of the strength or weakness of the evidence in the record. Contrary to plaintiffs' current argument, we did not hold or state that the record before

12

Judge Miller (and before this court on appeal in *Rincon I*) was "insufficient" to support her findings or to support a later judgment in favor of defendants on the legal claims.[5] Judge Kahn's determination on remand that Judge Miller's findings pertaining to the equitable claims are dispositive of the legal claims does not conflict with any conclusion we reached in *Rincon I* about the evidence or about Judge Miller's findings, or with any rule of law stated in that opinion. Judge Kahn did not violate our remittitur or the law of the case.

More broadly, in our view there is no inconsistency between our finding of reversible error in *Rincon I* and the established rule in California jurisprudence that, when a case involves both legal and equitable claims, the resolution of one set of claims may result in factual and legal determinations that dispose of the other set of claims. (E.g., *Raedeke, supra,* 10 Cal.3d at p. 671; *Alcoa, supra,* 12 Cal.App.5th at p. 355; *Hoopes, supra,* 168 Cal.App.4th at p. 157.) As Judge Kahn correctly recognized, the net result of our disposition in *Rincon I* was to leave intact (as a de facto first-phase trial) Judge Miller's resolution of the equitable claims. Before conducting a second-phase trial of the legal claims, it was appropriate for Judge Kahn to consider whether Judge Miller's findings in connection with the equitable claims rendered such a trial unnecessary.

Plaintiffs were not powerless to avoid this result. As illustrated by the Supreme Court's decision in *Raedeke*, if a plaintiff asserts both legal and equitable claims and wishes to preserve the ability to submit the legal claims to a jury, the plaintiff can abandon the equitable claims. (See *Raedeke, supra,* 10 Cal.3d at p. 671.) In their briefing in *Rincon I*, plaintiffs themselves noted they might have taken this approach if Judge Miller had declined to enforce the jury waivers and had announced her intention to

---

[5] Also incorrect is plaintiffs' assertion that this court's "mandate, after *Rincon I* and footnote 12, was to try the case on the legal claims with plaintiffs' jury demand granted." As noted, we stated in footnote 12 that "the fact we reverse in part for lack of an enforceable jury waiver does *not* mean plaintiffs are necessarily entitled to a jury trial on their remaining legal claims." (*Rincon I, supra,* 8 Cal.App.5th at p. 20, fn. 12, italics added.)

13

conduct a bench trial on the equitable claims before submitting the legal claims to a jury. (*Rincon I, supra,* 8 Cal.App.5th at p. 20.)

But plaintiffs could have taken *the same approach* in response to Judge Miller's actual ruling, i.e., her decision to enforce the jury waivers and conduct a bench trial on all claims. Having argued unsuccessfully to Judge Miller that the jury waivers were unenforceable (see *Rincon I, supra,* 8 Cal.App.5th at p. 9), and aware that her ruling on that point would be an appealable issue if they did not prevail on the legal claims at trial, plaintiffs could have decided it was a priority to preserve their ability to submit (eventually) their legal claims to a jury. To keep that option open, they could have dropped some or all of their equitable claims to ensure that an adverse outcome on those claims would not interfere with their ability to seek a future jury trial on the legal claims.

Plaintiffs may have had reasons for not taking this approach. They may have decided it was a priority to seek a favorable disposition of the equitable claims (which included the claim to set aside the foreclosure of the Property (see *Rincon I, supra,* 8 Cal.App.5th at p. 9)) rather than abandoning those claims. We note that, in their appellate briefs in *Rincon I*, plaintiffs presented extensive arguments challenging Judge Miller's resolution of the equitable claims for unfair competition and to set aside the foreclosure, suggesting they viewed those claims as important. (See *Rincon I*, *supra*, 8 Cal.App.5th at p. 5; *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (Jan. 31, 2017, A138463) [nonpub. portion of partially pub. opn.] (*Rincon I*, nonpub. portion).) But similar considerations likely exist in any case where a plaintiff must choose whether to drop his or her equitable claims to preserve the ability to submit legal claims to a jury. Since plaintiffs did not abandon their equitable claims, Judge Miller's findings in connection with those claims are binding and (as discussed) dispose of plaintiffs' legal claims.

**D.** **Plaintiffs Are Not Entitled to Relitigate Issues Resolved by Judge Miller**

Plaintiffs contend that, as a matter of appellate procedure, they were entitled on remand to relitigate all factual issues relevant to their legal claims, even if Judge Miller resolved the identical issues when she addressed the equitable UCL claim. Plaintiffs base

14

this argument on the rule that, in general, " '[a]n unqualified reversal remands the cause for a new trial . . . , and places the parties in the trial court in the same position as if the cause had never been tried, with the exception that the opinion of the court on appeal must be followed so far as applicable.' [Citation.] This principle is equally applicable to a partial reversal of a judgment." (*Hall v. Superior Court* (1955) 45 Cal.2d 377, 381 (*Hall*); accord, e.g., *Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 263.)

But as plaintiffs acknowledge, an appellate court may limit or define the issues to be addressed on remand. (E.g., *Puritan Leasing Co. v. Superior Court* (1977) 76 Cal.App.3d 140, 148–149 [prior appellate opinion foreclosed retrial on some but not all issues]; see *Hall*, *supra*, 45 Cal.2d at p. 381 [general rule allowing retrial is subject to proviso that trial court is to follow the opinion of the appellate court].) Here, as discussed in part II.C above, our opinion in *Rincon I*, specifically footnote 12, contemplates and authorizes trial court proceedings on remand that could narrow or eliminate the issues to be tried. (*Rincon I*, *supra*, 8 Cal.App.5th at p. 20, fn. 12.) Judge Kahn, by proceeding in accordance with footnote 12, did not violate the rules of appellate procedure. We need not determine what the proper scope of proceedings on remand would have been if we had not addressed the matter in footnote 12.

The three pairs of cases highlighted by plaintiffs in support of their argument that a retrial was required here—the *Bate*, *Lagiss*, and *Robinson* cases—are distinguishable. In each set of cases, the appellate court in the first appeal reversed a trial court judgment without specifying any limitation on the issues to be retried. In the second appeal, the appellate court held the prior unqualified reversal required a retrial.

In *Bate v. Marsteller* (1959) 175 Cal.App.2d 573, 576, 583–584 (*Bate I*), a fraud action brought by sellers of real estate, the appellate court reversed a judgment in favor of a group of broker defendants as unsupported by substantial evidence, while rejecting some other grounds for reversal; the court affirmed the judgment in favor of a different group of defendants. In *Bate v. Marsteller* (1965) 232 Cal.App.2d 605, 617–618 (*Bate II*), the appellate court held that the "unqualified reversal" in *Bate I* as to the broker defendants left factual issues as to those defendants "open for determination."

15

In *People ex rel. Department of Public Works v. Lagiss* (1958) 160 Cal.App.2d 28, 30, 33, 37 (*Lagiss I*), a condemnation action, the appellate court reversed the judgment because the trial court improperly prevented the defendant property owner from pleading and seeking to prove that the condemning agency acted in bad faith and abused its discretion. In *People ex rel. Department of Public Works v. Lagiss* (1963) 223 Cal.App.2d 23, 30, 31, fn. 4, 44–45 & fn. 13, 47–49 (*Lagiss II*), the appellate court held that the "unqualified reversal" in *Lagiss I* "set[] the case at large," so the defendant property owner was entitled to relitigate the issue of the amount of compensation due, even though the first appeal involved no claim of error as to compensation.

In *Robinson v. Thornton* (1893) 102 Cal. 675, 679–681, 685 (*Robinson I*), an action involving competing claims to land, the Supreme Court reversed the trial court judgment and found there was sufficient evidence to support a finding that defendant Thornton obtained title through adverse possession. In *Robinson v. Thornton* (1896) 114 Cal. 275, 276–277 (*Robinson II*), the Supreme Court held that the reversal in *Robinson I* did not *require* the jury to find at the retrial that adverse possession was established, and the trial court erred by directing a verdict on that point; adverse possession was a question of fact for the jury.

None of these cases involved the scenario at issue here, where the first appellate decision (i.e., our opinion in *Rincon I*) (1) affirmed the judgment as to one set of claims and (2) authorized the trial court to determine on remand whether the findings made in connection with those claims disposed of the remaining claims. We are not persuaded by plaintiffs' argument that *Bate*, *Lagiss*, and *Robinson* establish that Judge Kahn committed reversible error here.

In a related argument, plaintiffs assert that the usual rule that findings pertaining to one set of claims (equitable or legal) are binding in the determination of the other set of claims (discussed in parts II.A and II.B above) has no application when the trial court's decisions resolving the two sets of claims are separated by a Court of Appeal decision. Plaintiffs contend applying that preclusion doctrine after a partial reversal and remand would conflict with the rules of appellate procedure allowing for a retrial as set forth in

16

*Hall, supra*, 45 Cal.2d 377 and other cases. Again, however, we see no conflict between these doctrines in the present case. As discussed, Judge Kahn's determination of the preclusive effect of Judge Miller's findings was consistent both with our opinion in *Rincon I* (and thus with *Hall*, which, as noted, provides a trial court is to proceed in accordance with the opinion of the appellate court) and with the preclusion principles applicable in cases involving equitable and legal claims.

In their reply brief, plaintiffs suggest that giving preclusive effect to Judge Miller's findings improperly impairs their ability to obtain appellate review of those findings. They did not develop such an argument in their opening brief, so we need not address it. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) Plaintiffs note that *Samara v. Matar* (2018) 5 Cal.5th 322 (*Samara*), the case on which they rely for this argument, was decided in June 2018, after plaintiffs filed their opening brief in May 2018, but before defendants filed their appellate brief in September 2018. If plaintiffs wished to add an argument based on *Samara*, they should have sought leave to file a supplemental opening brief before defendants' brief was due, rather than saving the issue for reply. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–766.)

Plaintiffs' contention lacks merit in any event. In their appeal from the judgment entered by Judge Miller, plaintiffs had the opportunity to challenge any and all of her factual and legal determinations. As we discussed in the unpublished portion of our opinion in *Rincon I*, plaintiffs challenged some aspects of Judge Miller's analysis of their UCL claim, including arguing (1) Judge Miller applied the wrong legal standard for determining whether defendants' conduct was "unfair" under the UCL, (2) Judge Miller misinterpreted contract terms and defendants' conduct pertaining to such matters as whether defendants approved a budget for the Property, and defendants' efforts to convince plaintiffs' investor sponsor to contribute funds for tax payments, and (3) Judge Miller's finding that plaintiffs were not entitled to extend the maturity date of the Loan beyond June 2009 and defaulted by failing to repay it (a finding that Judge Miller concluded barred all of plaintiffs' claims) did not insulate defendants from liability for their unfair conduct, including allegedly engaging in "dual tracking" by seeking to sell

17

the Loan while participating in loan modification discussions.  (*Rincon I,* nonpub. portion, *supra,* A138463.)

But as to Judge Miller's conclusion that plaintiffs had not established liability under the "unlawful" and "fraudulent" prongs of the UCL (and the legal causes of action that underlay those portions of the equitable UCL claim), plaintiffs did *not* challenge a number of the key findings that were the principal bases for Judge Miller's rulings.  For example, Judge Miller found plaintiffs were not entitled to extend the maturity date of the Loan and therefore were in default when they failed to repay the Loan in June 2009, a finding that was a central ground for Judge Miller's conclusion that defendants were not liable on the legal claims that underlay their UCL claim.  In addition, in connection with each of the alleged violations of law underlying the "unlawful" and "fraudulent" prongs of the UCL claim—including defendants' alleged breaches of contract, fraud, slander of title, and violation of the UTSA—Judge Miller found that plaintiffs did not show that defendants' conduct caused them to suffer any damages, which she held to be an essential element of each of those underlying claims.  In the *Rincon I* appeal, plaintiffs did not challenge Judge Miller's findings that they were in default and proved no damages.

In addition, as to the causation-of-injury element of the UCL claim itself, we concluded in *Rincon I* that, in plaintiffs' opening appellate brief in that case, they did not challenge Judge Miller's finding that they had not proven defendants' alleged conduct caused them to suffer injury.  (*Rincon I,* nonpub. portion, *supra,* A138463.)  Based on plaintiffs' failure to challenge that essential element of UCL liability, we affirmed Judge Miller's rejection of that claim, and we did not address plaintiffs' arguments about whether Judge Miller mischaracterized certain aspects of defendants' conduct.  (*Ibid.*)

Plaintiffs now argue that, because this court in *Rincon I* affirmed the judgment on the UCL claim based on their failure to challenge Judge Miller's causation determination, her findings about whether defendants' conduct violated the UCL have "evaded" review and should not have binding effect.  We disagree.

Plaintiffs rely on our Supreme Court's decision in *Samara, supra,* 5 Cal.5th 322, but that case provides no basis for reversal here.  In *Samara*, the court held that, for

18

purposes of claim and issue preclusion, when a trial court ruling is based on multiple grounds, "a ground reached by the trial court *and properly challenged on appeal*, but not embraced by the appellate court's decision, should not affect the judgment's preclusive effect." (*Id.* at p. 334, italics added.) Instead, the preclusive effect of the judgment should be evaluated as though the trial court had not reached the issue that the appellate court did not reach. (*Id.* at pp. 326, 338.) The Supreme Court noted a limitation on its ruling: "We caution, however, that we take no position on the significance of an independently sufficient alternative ground reached by the trial court and *not* challenged on appeal." (*Id.* at p. 337.)

In *Samara*, a dental malpractice case, the plaintiff (Samara) sued two dentists, Dr. Nahigian, who allegedly was negligent, and Dr. Matar, on grounds of vicarious liability. (*Samara*, *supra*, 5 Cal.5th at p. 327.) The trial court entered summary judgment for Dr. Nahigian on two grounds, the statute of limitations and a lack of evidence of causation. (*Ibid.*) In the first appeal, the appellate court affirmed solely on the basis of the statute of limitations, even though Samara urged the court to address and reverse the finding of a lack of causation. (*Ibid.*) In the meantime, Dr. Matar moved for summary judgment on the basis that the trial court's prior ruling that Dr. Nahigian's alleged negligence did not cause injury entitled him (Dr. Matar) to judgment as well, since the sole alleged basis for his liability was his vicarious liability for Dr. Nahigian's conduct. (*Id.* at pp. 327–328.) After the appellate decision in favor of Dr. Nahigian became final, the trial court granted Dr. Matar's motion, but the Court of Appeal reversed, and the Supreme Court affirmed the Court of Appeal's decision (*id.* at p. 328), concluding "the preclusive effect of the judgment in favor of Nahigian should be evaluated as though the trial court had not reached the causation issue" (*id.* at p. 338).

Even assuming *Samara* might in some circumstances limit the applicability of the preclusion principle on which Judge Kahn relied (i.e., the rule that findings pertaining to equitable claims are binding in the resolution of legal claims *in the same case*), it does not support plaintiffs' position here. As discussed, unlike the appellant in *Samara, supra,* 5 Cal.5th at p. 334, plaintiffs in *Rincon I* did not "properly challenge[]" the findings by

19

Judge Miller that are dispositive of the legal claims underlying the "unlawful" and "fraudulent" prongs of plaintiffs' equitable UCL claim, including the findings that plaintiffs were in default as of June 2009 and did not prove any damages flowing from defendants' conduct. Accordingly, Judge Miller's findings, in particular those bearing on causation of injury—whether viewed as an element of plaintiffs' underlying legal claims or as a prerequisite for liability on plaintiffs' equitable claim under the UCL—are binding and are unaffected by *Samara*. Those findings were grounds for Judge Miller's decision that plaintiffs did *not* challenge in their first appeal. (*Samara, supra,* at pp. 334, 337; *Rincon I,* nonpub. portion, *supra,* A138463.)

**E.    Judge Kahn Could Properly Take Judicial Notice of Judge Miller's Findings to Determine Their Preclusive Effect**

In support of the summary judgment motion that ultimately was heard by Judge Kahn, defendants submitted a request for judicial notice of several documents, including Judge Miller's statement of decision. Plaintiffs contend Judge Kahn could not take judicial notice of the truth of Judge Miller's findings and therefore defendants' summary judgment motion lacked any evidentiary support. But even assuming it was necessary for Judge Kahn to take judicial notice as a prerequisite to considering findings made during an earlier phase of the same case, he correctly ruled that it is proper for a court to take judicial notice of factual findings in determining whether those findings have preclusive effect. (*Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387, 1393 (*Hawkins*).)

Taking judicial notice of a finding in determining its preclusive effect does not involve a determination of the finding's truth. As the *Hawkins* court explained in the context of claim and issue preclusion: " ' "Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully." [Citation.] In other words, even though a factual finding in a prior judicial decision may not establish the truth of that fact for purposes of judicial notice, the finding itself may be

20

a proper subject of judicial notice if it has a res judicata or collateral estoppel effect in a subsequent action.' " (*Hawkins, supra,* 246 Cal.App.4th at p. 1393.)  Judge Kahn properly took judicial notice of Judge Miller's findings in determining their preclusive effect.

## III.  DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


                                                                STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

| | |
|---|---|
| Trial Court: | City & County of San Francisco Superior Court |
| Trial Judge: | Hon. Harold E. Kahn |
| Counsel for Appellants: | FOLEY & LARDNER LLP<br>Kathleen Smalley |
| Counsel for Respondents: | MANATT, PHELPS & PHILLIPS, LLP<br>Barry W. Lee<br>Benjamin G. Schatz<br>Christian E. Baker<br>Ana G. Guardado<br>Stephanie A. Roeser |

*Rincon EV Realty LLC  v. CP III Rincon Towers, Inc.* (A152935)